IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SOHAIL KARIM KHETANI, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 12-0215-CV-W-ODS |
| ) | |
| JAMES W. PETTY, Morgan County ) | |
| Sheriff, ERIC H. HOLDER, JR., ) | |
| Attorney General, JANET ) | |
| NAPOLITANO, Secretary of Homeland ) | |
| Security, and KEN CARLSON, Kansas ) | |
| City Field Office Director, Immigration ) | |
| and Customs Enforcement, ) | |
| ) | |
| Respondents. ) | |

ORDER AND OPINION DENYING PETITION FOR WRIT OF HABEAS CORPUS

Pending is Petitioner's Petition for Writ of Habeas Corpus. Having considered the issues, the Court denies Petitioner's request for relief.

I. BACKGROUND

Petitioner, a citizen of India, entered the United States in 1997 at the age of fourteen. He pled guilty to a charge of possessing drug paraphernalia in the State of Kansas in 2007 and was sentenced to eleven months of confinement (with the sentence suspended) and twelve months of probation. In June 2011, Petitioner was permitted to withdraw his plea of guilty and plead instead to a charge of possessing marijuana; he was sentenced to time served.

On January 27, 2012, Petitioner was arrested for misdemeanor drug possession. Three days later Kansas authorities released Petitioner to the custody of Immigration and Customs Enforcement ("ICE"), which determined Petitioner was inadmissible based on his 2007 conviction. Petitioner was then detained without bond pursuant to 8 U.S.C. § 1226(c). Petitioner appeared before an immigration judge (the Honorable John

O'Malley), who denied Petitioner's request for bond based on decisions from the Bureau of Immigration Appeals interpreting section 1226(c). Petitioner did not appeal to the BIA; instead, he filed the instant suit seeking a writ of habeas corpus.[1]

## II. DISCUSSION

Section 1226(c) states that a person shall be taken into custody based on various criminal activity "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." Petitioner focuses on the language indicating the obligation to take the person into custody "when the alien is released" to argue that it does not apply in these circumstances.

First, he argues the concept of "release" means there must have been a criminal sentence requiring custody. This argument is not supported by the statute; nothing in the statute requires that there have been a sentence of incarceration. The Board of Immigration Appeal ("BIA") has reached a similar conclusion, holding that "an alien who is released from criminal custody (including from an arrest preceding a conviction . . . ) . . . is subject to mandatory detention pursuant to [8 U.S.C. § 1226(c)], even if the alien is not immediately taken into custody by immigration officials when released from incarceration." In re Kotliar, 24 I. & N. Dec. 124, 125 (BIA 2007). In any event, Petitioner's argument that he did not serve time in custody is belied by the Record. He argues that he technically served no time because after he served his sentence he withdrew his plea and pleaded guilty to a different offense for which he was sentenced

---

[1]The Court was, and remains, uncertain about its jurisdiction in this matter. The Court directed the parties to brief the matter, explaining that while it was clear that the issues Petitioner raises are cognizable in federal court, this fact "does not establish that *this* court has jurisdiction at *this* time." Beyond insisting the Court does have jurisdiction, the parties did little to address the Court's confusion. (The Government did invite the Court to decline jurisdiction). However, given that (1) the parties agree that jurisdiction exists and (2) Petitioner will not prevail in any event, the Court will accept the parties' representations that jurisdiction exists.

2

to the time served on the prior conviction (for which he had withdrawn his plea); from this, he concludes he was never actually confined for any conviction. This argument elevates form over substance, so it would be rejected even if Petitioner's statutory interpretation were correct.

Second, Petitioner contends that ICE did not detain him "when" he was released because ICE did not detain him until more than a year after he was released from custody. This argument has been rejected by the BIA but has gained traction in some courts. The Court believes that Petitioner's argument is foreclosed by the statute's clear language – but even if the statute is ambiguous, the BIA's interpretation is entitled to deference.

Petitioner's argument requires interpreting "when" to mean "immediately after," thereby imposing a time limit on ICE's power to take an alien into custody. However, there is no time limit in the statute. Petitioner's interpretation would require courts to ascertain how much time-passage is "too much" such that section 1226(c) is not applicable. Is ten days too much time? Two weeks? A month? There are no standards suggested by the statute, nor is there any explicit language suggesting a deadline of any kind exists. This causes the Court to conclude that "when" is synonymous with "after," indicating that ICE cannot detain a person before they have been released from custody. This interpretation makes clear Congress' intent that a person convicted of a crime or otherwise entwined in the criminal process of a particular jurisdiction remain until they have completed whatever punishment is deemed appropriate; only after the process is completed may they be detained by ICE and removed from the country.

Petitioner posits a series of policy arguments against such an interpretation, as well as arguments supporting ICE's ability to act quickly upon a removable alien's release from custody. These arguments are best directed to Congress, which can then establish appropriate deadlines. At present, as the statute is currently written, no deadline is evidenced. "When" describes the sequence of events, not the amount of time allotted for those events to occur.

3

At worst, the statute is vague as to the meaning of "when," and in that scenario the Court agrees with Respondents that deference is due to the BIA's interpretation that the statute does not require the alien be "taken into [ICE] custody immediately upon his release from state custody." In re Rojas, 23 I. & N. Dec. 117, 127 (BIA 2001). When "the BIA is confronted with an ambiguous statute, [courts] will defer to a reasonable interpretation of the statute by the agency, in accord with the doctrine of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-45 (1984)." Renteria-Ledesma v. Holder, 615 F.3d 903, 905 (8th Cir. 2010); see also Amador-Palomares v. Ashcroft, 382 F.3d 864, 868 (8th Cir. 2004). Petitioner argues that Rojas is not entitled to deference because it contradicts the statute's clear language, but this is simply not true. The statute does not clearly contain a time limit, nor does it clearly evince Congress' desire that there be one. As stated, at worst, the statute is ambiguous – meaning there is no clear statutory language to overcome the deference due the BIA. Petitioner also points to judicial decisions disagreeing with Rojas, but Respondent points to its own list of judicial decisions upholding Rojas. None of these decisions are binding on the Court, and the divergence of opinion reinforces the conclusion that the statute is ambiguous, thereby justifying deference to the BIA. Finally, the Court is not persuaded by those decisions holding that the statute imposes a temporal requirement.

### III. CONCLUSION

For the reasons stated, Petitioner's request for a Writ of Habeas Corpus is denied.

IT IS SO ORDERED.

DATE: April 24, 2012

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT